# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CT-00823-SCT

*BILLY MACK SULLIVAN, TERESA SULLIVAN
RANKIN, BILLY H. SULLIVAN, ALICE M.
LOWTHER, JAMES H. LOWTHER, JR., JULIAN
BARRY LOWTHER, PAUL EDWARD LOWTHER
AND SHERRI LYNN LACY*

*v.*

*EUGENE C. TULLOS d/b/a TULLOS & TULLOS,
JOHN RAYMOND TULLOS d/b/a TULLOS &
TULLOS, CRYMES G. PITTMAN, INDIVIDUALLY
AND d/b/a PITTMAN, GERMANY, ROBERTS &
WELSH, LLP AND BILLY MEANS*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 02/08/2007 |
| TRIAL JUDGE: | HON. BOBBY BURT DELAUGHTER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | W. TERRELL STUBBS |
| ATTORNEYS FOR APPELLEES: | CYNTHIA ANN STEWART |
| | S. WAYNE EASTERLING |
| | ROBERT G. GERMANY |
| | PAMELA A. FERRINGTON |
| | C. VICTOR WELSH, III |
| | DAVID GARNER |
| NATURE OF THE CASE: | CIVIL - LEGAL MALPRACTICE |
| DISPOSITION: | REVERSED AND REMANDED - 10/22/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.     This appeal arises from the Hinds County Circuit Court's grant of summary judgment

on behalf of Eugene C. Tullos (Tullos) and John R. Tullos, individually and doing business

as Tullos and Tullos; Crymes G. Pittman; Billy Means; and John Does 1-10 (the defendants) in a lawsuit filed by Billy M. Sullivan, Teresa S. Rankin, Billy H. Sullivan, Alice M. Lowther, James H. Lowther, Jr., Julian B. Lowther, Paul E. Lowther, and Sherri L. Lacy (the heirs). The Mississippi Court of Appeals affirmed this judgment in a plurality opinion. The heirs appeal and assert that the trial court erred procedurally in converting the Rule 12(b)(6) motion to dismiss into a motion for summary judgment under Rule 56 of the Mississippi Rules of Civil Procedure, that the trial court erred in finding that the statute of limitations had run against the heirs, and that the trial court erred in granting summary judgment on behalf of the defendants. Finding reversible error, we reverse and remand.

## FACTS

¶2.     The plaintiffs allege the following:[1] Jeff Wooley, a widower with no children, died intestate on March 9, 1998.  At the time of his death, Wooley owned approximately 423 acres of land in Smith County.  The appellants are some of Wooley's heirs at law.  Annie Boone, Wooley's sister, was appointed administratrix of the estate.  Eugene Tullos acted as Boone's attorney in the administration of the estate.  At one time, some of the heirs retained the services of separate attorneys, as there was originally a dispute about the inheritance. However, each attorney had been dismissed by the time of the sale of the land that gave rise to this appeal.

---

[1] A portion of the facts is taken from the complaint and/or the memorandum opinion of the trial court and the Court of Appeals.

¶3.    On August 21, 2000, a judgment approving the final accounting, estate closing, and discharging of the administratrix was entered.[2] The heirs allege that on the same day, Tullos told them that bids had been "invited and accepted on [the] 420 acres of land and that the Defendant, Crymes G. Pittman, had made the highest and best bid of $750.00 per acre."[3] However, the record contains no evidence that bids were taken on the property. Without knowledge of the failure to receive or request other bids as claimed by Tullos, the heirs allege they executed a warranty deed, prepared by Tullos, to Pittman. Each of the heirs received a check drawn on Tullos's "regular account" for his or her portion of the sale. The memo line of each check indicated that it was for the sale of estate land to Crymes G. Pittman.

¶4.    On April 10, 2002, Pittman deeded the 420 acres to Tullos. Later on, allegedly, one of the heirs sought out Tullos in order to purchase some of the land back from Pittman. The heirs assert that Tullos was evasive when questioned about the land. According to the plaintiffs, this raised some suspicion, and they subsequently discovered that Pittman did not own any of the land; but instead, Tullos owned all of it. The heirs then filed suit on April 8, 2005, against Tullos, Pittman, and various others, contending that the 2000 sale was fraudulent and that Pittman had acted as a "straw man" for Tullos to buy the property. Additionally, the complaint alleged that the Pittman defendants "knew or should have known

---

[2] At some point, three acres were removed from the estate; the total land sold on August 21, 2000, was 420 acres.

[3] Although the complaint alleges Pittman purchased the property for $750 per acre, the defendants stated during the hearing on the Rule 12(b)(6) motion that the property had sold for $710 per acre.

3

that they were being used as 'straw men' to purchase the 420 acres on behalf of the Tullos defendants at a price substantially lower than would have been received if bids and/or a private sale had been solicited on said property."

¶5.     The various defendants subsequently filed a motion to dismiss under Mississippi Rule 12(b)(6) without answering the heirs' complaint. On November 3, 2006, the court held a hearing on the Rule 12(b)(6) motion filed by the defendants. During the hearing, the heirs introduced copies of the checks that Tullos had tendered to them as payment for the land sold to Pittman. The defendants introduced an appraisal from the time of the sale showing the value of the land to be $500 per acre. Thereafter, during the hearing on the motion to dismiss, the court transformed the Rule 12(b)(6) motion into a motion for summary judgment under Rule 56, without ordering a continuance to allow the heirs a reasonable time to present evidence necessary for the proper adjudication of their claims as is required under the rule.

¶6.     On November 7, 2006, three days after the conclusion of the hearing, counsel for the heirs sent a letter to the trial court advising it that the heirs had a witness, identified only as a Mr. Jennings, who would testify as follows:

> [H]e was there with his money to pay more than what the property was sold for, but the way Mr. Tullos got around that was, he simply said that the time for bids had expired when actually no bids had been taken by him. Others who wanted to bid on the property were also told by Mr. Tullos they could not.

Subsequently, on November 30, the trial court entered a memorandum opinion, finding that summary judgment should be granted to the defendants. An order granting summary judgment was then entered on February 9, 2007. The heirs appealed accordingly.

4

**ANALYSIS AND DISCUSSION OF THE ISSUES**

¶7.    This Court applies a de novo standard of review to questions concerning the statute of limitations.  ***Ellis v. Anderson Tully Co.***, 727 So. 2d 716, 718 (Miss. 1998). Furthermore, "[t]his Court reviews grants of summary judgment under the de novo standard." ***Bullard v. Guardian Life Ins. Co. of Am.***, 941 So. 2d 812, 814 (Miss. 2006).  Pursuant to Rule 56 of the Mississippi Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c).  The court views the evidence in the light most favorable to the nonmoving party.  ***Univ. of Miss. Med. Ctr. v. Easterling***, 928 So. 2d 815, 817 (Miss. 2006).  "The moving party bears the burden of demonstrating there is no genuine issue of material fact." ***Id.*** (citing ***Fletcher v. Lyles***, 999 So. 2d 1271, 1276 (Miss. 2009)).

    **I.**      **WHETHER THE STATUTE OF LIMITATIONS HAS RUN AND THE HEIRS' CLAIMS ARE BARRED.**

¶8.    The heirs contend that the trial court erred in finding that the statute of limitations had run against them.  Having reviewed the record, we agree the trial court erred in granting summary judgment and reverse the trial court.

¶9.    The heirs allege that Tullos engaged in an act of fraudulent concealment when he indicated in the memo line of the checks given to them that the land was being sold to Pittman. In Mississippi, a claim of fraud has a three-year statute of limitations. Miss. Code Ann. § 15-1-49 (Rev. 2003); ***Sanderson Farms Inc. v. Ballard***, 917 So. 2d 783 (Miss. 2005).

¶10.    The heirs signed over the property in question to Pittman on August 21, 2000. Pittman deeded the property to Tullos on April 10, 2002.  The heirs filed suit on April 8, 2005.  Neither party disputes that a three-year statute of limitations applies to the heirs' claims. However, the heirs contend that the statute of limitations began to run on April 10, 2002, while the defendants claim that the statute began to run on August 21, 2000.

¶11.    The heirs assert that the ultimate purchase of the property by Eugene Tullos through Pittman was concealed fraudulently in an attempt to obtain the property at a value less than what the property was actually worth.  According to the assertions in the heirs' complaint, they had no reason to suspect any wrongdoing until they discovered the April 2002 deed to Tullos.

¶12.    The trial court found that the heirs failed to exercise reasonable diligence in seeking knowledge of the defendants' alleged fraudulent conduct.

¶13.    The plaintiffs allege that their fraud claim could not have accrued prior to April 10, 2002. It is a factual issue as to whether the heirs exercised reasonable dilligence and first discovered the alleged fraud on April 10, 2002. Miss. Code Ann. § 15-1-67 (Rev. 2003). Thus, absent proof of any other knowledge the plaintiffs may have had regarding the alleged fraud, the statute of limitations began to run on April 10, 2002, and the plaintiffs' April 8, 2005, complaint was timely filed within the three-year limitation period.

II.    **WHETHER THE TRIAL COURT ABIDED BY MISSISSIPPI RULES OF CIVIL PROCEDURE 12 AND 56.**

¶14.    The issue here is whether the trial court acted in accordance with Mississippi law in converting the defendants' motion to dismiss into a motion for summary judgment. More

specifically, the question is whether the trial court was required to give the plaintiffs ten days' notice prior to the hearing for the converted summary-judgment motion. We find that the trial court did not follow the proper procedure in converting the Rule 12(b)(6) motion into a motion for summary judgment, because timely notice was not given.

¶15.    Rule 12 of the Mississippi Rules of Civil Procedure sets forth the proper procedure for  converting a motion to dismiss into a summary-judgment motion. Rule 12(b) provides in part:

> If, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56 . . . .

Miss. R. Civ. P. 12(b).  This Court looks at Rule 12 in conjunction with Rule 56 governing motions for summary judgment. While this Court said in **Walton v. Bourgeois**, 512 So. 2d 698 (Miss. 1987), that it is not mandatory to require a ten-day notice of the hearing when a Rule 12 motion is converted, we have more recently held that:

> before this Court can determine on appellate review if the non-moving party has had a reasonable time in which to file documentation in opposition to a Rule 12(b)(6) motion that has been converted to a Rule 56 motion for summary judgment, *we must determine if the non-moving party has been afforded ten days['] notice of the court's intention to conduct a summary judgment hearing on a date certain.*

**Palmer v. Biloxi Reg'l Med. Ctr.**, 649 So. 2d 179, 183 (Miss. 1994) (emphasis added).

 Additionally, the **Palmer** court stated that:

> [r]ule 56(c) states, in part, that a "motion [for summary judgment] shall be served at least ten days before the time fixed for the hearing." Therefore, the trial court must give the parties ten days['] notice that it is converting the

moving party's motion to dismiss on the pleadings into a motion for summary judgment. Once the notice required by Rules 12(b) and 56 has been given, the trial court may then properly consider it as a converted motion for summary judgment along with any materials in support of or in opposition to the motion as of a certain day.

*Id.* (internal citations omitted).

¶16.    In the instant case, the trial judge converted the defendants' motion to dismiss into a summary-judgment motion because two exhibits were admitted into evidence during the hearing on the motion to dismiss. The two exhibits were a copy of the appraisal presumptively setting the value of the land at $500 an acre entered by the defendants and a copy of the checks issued on Tullos's regular account used to purchase the land entered by the plaintiffs. At the hearing, the defendants' motion to dismiss was the only motion considered by the trial court. The trial court informed the heirs that he would consider the parties' exhibits and treat the defendants' motion to dismiss as a motion for summary judgment. At this point, before continuing with a hearing on the converted motion for summary judgment, the trial court was required to give the heirs at least ten days' notice of the hearing. However, this did not occur.

¶17.    In a case involving similar procedural issues, a Rule 12(b)(6) motion to dismiss was converted into a motion for summary judgment because the parties presented material outside of the pleadings. *Jones v. Regency Toyota, Inc.*, 798 So. 2d 474 (Miss. 2001). At the hearing on Regency Toyota's motion to dismiss, the trial court stated that it would convert the motion to dismiss into a motion for summary judgment. *Id.* The trial court then granted summary judgment during the hearing. *Id.* Jones appealed, asserting that she was not given the ten-day notice of the summary-judgment hearing as required by Mississippi Rule of Civil

8

Procedure 56(c). *Id*. at 475-76 (¶6). This Court stated: "While the conversion was proper, the trial court failed to continue the hearing in order to allow Jones the opportunity to present any evidentiary material she felt pertinent to survive the Rule 56 motion." *Id*. at 476 (¶6).

¶18. This Court specifically noted in *Jones* that no matter how baseless the claim may appear to be, the Mississippi Rules of Civil Procedure require that respondents to a converted summary-judgment motion "be given 10 days' notice once a motion to dismiss is converted to a motion for summary judgment." *Id.* at 476 (¶9) This statement was in specific reference to the lack of notice prior to an actual hearing, and this Court further held that, because of this failure alone, "we must vacate the judgment." *Id*.

¶19. In the case before us, the defendants filed a motion to dismiss that was heard on November 3, 2006. At that point in time, the trial court correctly converted the motion into one for summary judgment based on the submission of two exhibits. The trial court subsequently took the matter under advisement and entered its memorandum opinion on November 30, 2006. We are mindful of the delay in time before the opinion was rendered. However, we must also note that the hearing was not continued after the conversion to allow for ten days' notice prior to a summary-judgment hearing as is required by the Mississippi Rules of Civil Procedure and the prior mandate of this Court in *Jones*. While the plaintiffs sent a letter detailing additional evidence three days after the hearing, this act alone does not waive the ten-day requirement. Therefore, this Court agrees with the dissent from the Court of Appeals and finds that we must reverse the trial court's holding and remand this case to give the heirs an opportunity to take advantage of the procedural safeguards in place for situations such as this as directed by Rule 56, *Palmer*, and *Jones*.

9

### III. WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT AS TO THE PITTMAN DEFENDANTS.

¶20. In the instant case, the trial court dismissed all defendants based upon the perceived lapse of the statute of limitations. Additionally, the court granted summary judgment as an alternative means of dismissing the Pittman defendants. The court specifically stated in the memorandum opinion that "even if the claims against the Pittman defendants in this action were not time-barred, the Court would nonetheless be compelled to grant their motion for summary judgment."

¶21. The trial court analyzed whether there was enough evidence to prove that a conspiracy existed without allowing the plaintiffs time to conduct any discovery in order to bring forth the needed proof. Therefore, when considering the motion for summary judgment, the trial court had, and this Court on appeal has, only the heirs' complaint (that has yet to be denied), cancelled checks from Tullos's regular account paying for the land, an appraisal of the land submitted by the defendants, and the letter from Mr. Jennings.

¶22. In the complaint, the heirs alleged that Tullos and Pittman effectuated the sale of the land through the employ of fraud with the ultimate intention of Tullos acquiring the property for himself at a lower-than-market-value cost. The trial court reasoned that the heirs had failed to come forward with any evidence tending to prove the fraud, yet the court did not allow the plaintiffs time to obtain evidence through discovery.

¶23. In finding summary judgment appropriate for the Pittman defendants, the trial court stated, "there is *only* an allegation that Pittman agreed to purchase, for $750 per acre, 420 acres of land (which had been appraised by an independent appraiser as being worth only

10

$500 per acre), and that he conveyed the land to Tullos approximately 20 months later." (footnote omitted) (emphasis added).

¶24. Defendants and the trial court also place great weight on this transaction occurring in concurrence with or subsequent to, the closing of the estate Tullos was hired to help administer. However, the plaintiffs' theory is that Tullos undertook the duty to sell the property and allegedly involved Pittman in the alleged scheme. While there is a factual discrepancy as to the amount of Pittman's involvement, the court again failed to allow the heirs an opportunity to further develop the record in order to make a proper decision concerning the Pittman defendants. Pittman's knowledge or lack thereof is of material importance.

¶25. Although the proof in the record supporting the heirs' allegation is circumstantial, the heirs were not given an opportunity to further develop the record. It is unreasonable to say that such an allegation, without an opportunity to conduct discovery or even a denial by Pittman, is deserving of summary judgment. It was error for the trial court to have dismissed such accusations as lacking evidence when the plaintiffs presented the best evidence available to them, and they were not allowed an opportunity to obtain further information in an effort to validate their assertions. Therefore, the combination of a complete lack of an opportunity for discovery and the absence of an answer by the defendants precludes summary judgment at this time.

## CONCLUSION

¶ 26. This Court is of the opinion that, based on the limited record herein, the statute of limitations did not run, and the heirs should be able to further develop their arguments. It is

11

also this Court's opinion that the trial court erred when it converted the defendants' motion to dismiss to one for summary judgment without giving the heirs ten days' notice before a hearing on the converted motion for summary judgment.

¶27.  Furthermore, the trial court could not properly determine whether summary judgment was appropriate for the Pittman defendants in this circumstance, where no discovery had been conducted. In fact, motions to compel discovery were pending, no depositions had been taken, no answers to interrogatories had been made, no responses to requests for production of documents had been made, no pertinent affidavits had been filed, and, most importantly, the defendants had not been allowed to deny the allegations made by the heirs in their complaint.  The trial court judge erred when he granted summary judgment as to the Pittman defendants and concluded that no genuine issues of material fact existed, without even a single denial of the allegations made by the heirs.

¶28.  Under these circumstances, it is premature to adjudicate the merits of the case on summary judgment, because it could not be determined adequately whether there is a genuine issue of material fact. Therefore, this Court reverses the summary judgment in favor of the defendants and remands this case for the trial court to set a time for the defendants to file their answer and allow the case to proceed.

¶29.  **REVERSED AND REMANDED**.

**WALLER, C.J., CARLSON AND GRAVES, P.JJ., DICKINSON AND LAMAR, JJ., CONCUR.  RANDOLPH, KITCHENS AND CHANDLER, JJ., NOT PARTICIPATING.**

12