20 So.3d 1 (2008)
Billy Mack SULLIVAN, Teresa Sullivan Rankin, Billy H. Sullivan, Alice M. Lowther, James H. Lowther, Jr., Julian Barry Lowther, Paul Edward Lowther and Sherri Lynn Lacy, Appellants
v.
Eugene C. TULLOS d/b/a Tullos & Tullos, John Raymond Tullos d/b/a Tullos & Tullos, Crymes G. Pittman, Individually and d/b/a Pittman, Germany, Roberts & Welsh, LLP, and Billy Means, Appellees.
No. 2007-CA-00823-COA.
Court of Appeals of Mississippi.
November 4, 2008.
Rehearing Denied April 7, 2009.
*2 W. Terrell Stubbs, attorney for appellants.
Cynthia A. Stewart, S. Wayne Easterling, G. David Garner, Pam A. Ferrington, Robert G. Germany, attorneys for appellees.
EN BANC.
IRVING, J., for the Court.
¶ 1. This appeal arises from the Hinds County Circuit Court's grant of summary judgment on behalf of Eugene C. Tullos (Tullos) and John R. Tullos, individually and doing business as Tullos and Tullos; Crymes G. Pittman; Billy Means; and John Does 1-10 (the defendants) in a lawsuit filed by Billy M. Sullivan, Teresa S. Rankin, Billy H. Sullivan, Alice M. Lowther, James H. Lowther, Jr., Julian B. Lowther, Paul E. Lowther, and Sherri L. Lacy (the heirs). Aggrieved by the court's decision, the heirs appeal and assert that the court erred in converting a Rule 12(b)(6)[1] motion to dismiss into a motion for summary judgment under Rule 56 of the Mississippi Rules of Civil Procedure, that the court erred in finding that the statute of limitations had run against the heirs, and that the court erred in granting summary judgment on behalf of the defendants.
¶ 2. Finding no reversible error, we affirm.

FACTS
¶ 3. Jeff Wooley, a widower with no children, died intestate on March 9, 1998.[2] At the time of his death, Wooley owned approximately 423 acres of land in Smith County. The appellants in this appeal are Wooley's heirs at law. Annie Boone, Wooley's sister, was appointed administratrix of the estate. Tullos acted as Boone's attorney. At one time, some of the other heirs had hired a different attorney to represent them, but it appears that that attorney had been dismissed at the time of the event that gave rise to this appeal.
¶ 4. On August 21, 2000, a judgment approving the final accounting, closing the estate, and discharging the administratrix was entered.[3] The heirs allege that on the same day, Tullos told them that bids had been "invited and accepted on [the] 420 acres of land and that the Defendant, Crymes G. Pittman, had made the highest and best bid of $750.00 per acre."[4] In reality, there is no evidence that any bids were taken on the property. The heirs executed a warranty deed, prepared by Tullos, to Pittman. Each of the heirs received a check drawn on Tullos's "regular account" for their portion of the 420 acres. The memo line of each check indicates that it was for the sale of estate land to Crymes G. Pittman.
¶ 5. On April 10, 2002, Pittman deeded the 420 acres to Tullos. Accordingly, the *3 heirs filed suit against Tullos, Pittman, and various others, contending that the 2000 sale was fraudulent and that Pittman had acted as a "straw man" for Tullos to buy the property. The suit was filed on April 8, 2005. The defendants filed a motion to dismiss under Mississippi Rule 12(b)(6). On November 3, 2006, the court held a hearing on the Rule 12(b)(6) motion. During the hearing, the heirs introduced copies of the checks that were tendered by Tullos to them as payment for the land sold to Pittman. The defendants also introduced an appraisal showing the value of the land to be $500 per acre. Thereafter, the court transformed the Rule 12(b)(6) motion into a motion for summary judgment under Rule 56. In this regard, the record reflects the following:
THE COURT: Excuse me. I don't recall. Were these attached to the complaint?
COUNSEL FOR THE HEIRS: No, Your Honor. We have not done any discovery in this case. They have not responded to the discovery we filed and they have filed no discovery request.
THE COURT: I understand. The only reason I asked so I will be clear on the appropriate standard to apply in making my ruling. The Court, then, since it is being asked without objection to consider matters outside of the pleadings, the Court will treat this as a motion for summary judgment as opposed to a 12(b) motion under the rules. I am sorry to interrupt. Go ahead.
COUNSEL FOR THE HEIRS: That's quite all right, Your Honor.
¶ 6. At the conclusion of the hearing, the following exchange occurred:
THE COURT: All right. I am going to take the matter under advisement. I will have a ruling issued as expeditiously as possible, hopefully, within a few days[,] but I do want to reread these cases that have been submitted and study the exhibits that have been offered today. Now as to the remaining motions, we can do it one of two ways. If the Court denies the dispositive motions, then the Court can proceed at that time to issue an order or orders concerning the other motions; that is, just making the decision on the submissions that have been filed or if either side desires you can argue respective positions this morning and I will also take that under advisement. So what's the plaintiff's pleasure concerning your motion to compel?
COUNSEL FOR THE HEIRS: Your Honor, I think in light of that statement, Judge, we can just wait and proceed on our pleadings that we filed, our various motions and responses to those motions. I think, obviously, if you grant the motion that will certainly affect what will happen. But also if you deny their motion, then I assume we would enter a scheduling order and then move along on the other motions also. But I don't see the need to argue anything unless [counsel for the defendants] do.
¶ 7. On November 7, 2006, three days after the conclusion of the hearing, counsel for the heirs sent a letter, not an affidavit, to the court advising it that the heirs had a witness, identified only as a Mr. Jennings, who would testify as follows:
[H]e was there with his money to pay more than what the property was sold for, but the way Mr. Tullos got around that was, he simply said that the time for bids had expired when actually no bids had been taken by him. Others who wanted to bid on the property were also told by Mr. Tullos they could not.
*4 On November 30, the court entered a memorandum opinion, finding that summary judgment should be granted to the defendants. An order granting summary judgment was entered on February 9, 2007. The heirs appealed accordingly.
¶ 8. Additional facts will be given in our analysis and discussion of the issues as necessary.

ANALYSIS AND DISCUSSION OF THE ISSUES

1. Conversion into Motion for Summary Judgment
¶ 9. The heirs contend that the court erred in converting the defendants' Rule 12(b)(6) motion into a motion for summary judgment. Specifically, the heirs argue that they were denied the requisite ten-day notice that is required before a hearing on a motion for summary judgment and that the court erred in "failing to allow any discovery prior to granting the Rule 56 motions for summary judgment."
¶ 10. The record belies the heirs' allegations. While the court did not explicitly give the parties ten days before ruling on the motion for summary judgment, the record reveals that the heirs had ample opportunity to submit evidence to the court. At the outset, we note that it was the heirs' actions that led to the court's conversion of the motion into one for summary judgment, an act that should have been foreseeable by their attorney. As explained by the Mississippi Supreme Court, presenting evidence converts a Rule 12(b)(6) motion into one for summary judgment:
However, where a trial judge considers matters outside the pleadings, motion to dismiss and response, the motion ceases to be one for dismissal under Rule 12(b)(6). Rein v. Benchmark Constr. Co., 865 So.2d 1134, 1142 (Miss.2004). Rather, it is appropriately considered as a motion for summary judgment under Rule 56. Id. In Rein, the trial court considered the plaintiff's complaint, as well as the defendant's answer, "along with the response to the motion to dismiss and the accompanying exhibits." Id. (emphasis added). As a result, we held that the trial court improperly labeled the motion as one for dismissal under Rule 12(b)(6). Id. Instead, the court should have labeled it as a motion for summary judgment. Id.

Gulledge v. Shaw, 880 So.2d 288, 292(¶ 7) (Miss.2004). Therefore, when a party introduces evidence outside of the pleadings in defense or support of a Rule 12(b)(6) motion, the motion is converted into one for summary judgment. In the case before us, it was the heirs who converted the motion when they chose to introduce the checks in defense of the Rule 12(b)(6) motion.
¶ 11. Furthermore, the court did not rule on the motion for summary judgment until November 30, and a final judgment was not entered until February 9, 2007, more than three months after the heirs were first given notice by the court that it was converting the Rule 12(b)(6) motion into a motion for summary judgment. During those three months, the heirs did nothing to stay the court's ruling in order to pursue discovery, nor did they pursue any relief under Rule 56(f).[5] In fact, as *5 already noted, when the court advised the parties that it was going to treat the Rule 12(b)(6) motion as a motion for summary judgment, counsel for the heirs responded that that was "quite all right" with him. Further, at the conclusion of the hearing when the court inquired about the remainder of the heirs' pending motions, their counsel advised essentially that he was willing to abide the court's ruling on the motion for summary judgment before proceeding any further with respect to the motions.
¶ 12. Clearly, the heirs had ample opportunity to either present evidence in defense of the summary judgment motion or request additional time to produce such evidence. This contention of error is without merit.

2. Statute of Limitations
¶ 13. The heirs contend that the court erred in finding that the statute of limitations had run against them. Having reviewed the record, we agree.
¶ 14. The heirs signed the property in question over to Pittman on August 21, 2000. Pittman deeded the property to Tullos on April 10, 2002. The heirs filed suit on April 8, 2005. Neither party disputes that a three-year statute of limitations applies to the heirs' claims. The heirs contend that the statute of limitations began to run on April 10, 2002, while the defendants claim that the statute began to run on August 21, 2000.
¶ 15. According to the heirs, Tullos engaged in an act of fraudulent concealment when he indicated in the memo line of the checks given to them that the land was being sold to Pittman. It is fundamental that "fraudulent concealment of a cause of action tolls its statute of limitations." Robinson v. Cobb, 763 So.2d 883, 887(¶ 18) (Miss.2000) (quoting Myers v. Guardian Life Ins. Co. of Am., 5 F.Supp.2d 423, 431 (N.D.Miss.1998)). In order to prove fraudulent concealment, a party must show "some act or conduct of an affirmative nature designed to prevent and which does prevent discovery of the claim." Id. at 887(¶ 19) (quoting Reich v. Jesco, Inc., 526 So.2d 550, 552 (Miss.1988)).
¶ 16. If the facts are as they allege them to be, such would be sufficient to toll the statute of limitations until the heirs could reasonably be expected to discover the fraud. The deed to Pittman was not filed until April 10, 2002. Therefore, the heirs could not have discovered the alleged fraud until then. Thus, we agree with the heirs that the statute of limitations began to run on April 10, 2002, and that their April 8, 2005, complaint was timely filed. Based on the facts presented in the heirs' complaint, they had no reason to suspect any wrongdoing until they discovered the April 2002 deed to Tullos.

3. Summary Judgment
¶ 17. We review a court's grant of summary judgment de novo. Pate v. Conseco Life Ins. Co., 971 So.2d 593, 594-95(¶ 3) (Miss.2008). Such a motion "should be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id. at 595(¶ 3) (quoting Hartford Cas. Ins. Co. v. Halliburton Co., 826 So.2d 1206, 1209(¶ 6) (Miss.2001)); see M.R.C.P. 56(c).
¶ 18. We find that the court properly granted summary judgment on behalf of the defendants, as the heirs have failed to show any evidence of collusion or conspiracy between Tullos and Pittman. The heirs have completely failed to present a genuine issue of material fact regarding their claims. The most they have presented is that the property was sold and then was later transferred to Tullos. The heirs have presented no evidence that Tullos *6 provided the money for the purchase of the property from the heirs, or that Pittman purchased the property and was then reimbursed by Tullos. Indeed, the transfer from Pittman to Tullos did not take place until a year and a half after the sale. If Pittman had been acting as a straw man, it is unclear why he did not transfer the property sooner. Even if there was something improper about Pittman purchasing the property on Tullos's behalf, the heirs have utterly failed to show that such is the case. At most, the heirs have showed that Pittman purchased the property in 2000 and then gave the property to Tullos in 2002 for unknown reasons.
¶ 19. Additionally, the heirs have failed to show that they have suffered any harm as a result of the alleged impropriety. The land was appraised as worth five hundred dollars an acre, a figure that the heirs have yet to rebut. Although the heirs question the accuracy of the appraisal, they have offered nothing else indicating the value of the property. In August 2000, the heirs sold the property for $710 an acre$210 more per acre than the appraisal indicated. The heirs have presented no affidavits or other evidence to indicate that there were buyers willing to pay more than $710 an acre, or that any action by Tullos improperly prevented others from bidding on the property.
¶ 20. The heirs argue strenuously that there is a genuine issue of material fact due to Tullos's owing them a fiduciary duty. We need not discuss this allegation, but even if we were to accept that Tullos owed the heirs a fiduciary duty (and we do not), the heirs have presented no evidence that Tullos acted contrary to that duty. First, there is nothing in the complaint to suggest that Tullos owed the heirs a fiduciary duty. Tullos represented the administratrix in the estate matter. The estate was already closed when the land transaction took place. There is no allegation in the complaint that, as a part of his representation of the administratrix, Tullos was either asked to sell or agreed to sell the real property in question. Since title to real property passes directly to heirs, outside of an estate proceeding,[6] any obligation on Tullos's part to sell the 420 acres would necessarily have to emanate from an employment agreement with the heirs. The complaint does not allege that such agreement was in place. We also briefly note that the heirs place much emphasis on the fact that Tullos allegedly told them that Pittman offered the highest bid when in fact no bids had been received. We fail to see the significance or materiality of this allegation because the complaint does not allege anything about the terms and conditions that Tullos was obligated to follow in selling the land, assuming that he obligated himself to sell the land outside of the estate proceedings.
¶ 21. Since the heirs failed to produce a genuine issue of material fact, we find that summary judgment was properly entered on behalf of the defendants, although we disagree with the trial judge's finding that the statute of limitations precluded recovery. An appellate court is authorized to affirm if it finds that the trial court reached the right result, albeit, for the wrong reason. Mason v. S. Mortg. Co., 828 So.2d 735, 738(¶ 15) (Miss.2002) (citing Puckett v. Stuckey, 633 So.2d 978, 980 (Miss.1993)). Therefore, we affirm the grant of summary judgment in favor of all defendants.
¶ 22. We find no merit in the argument advanced in the separate opinion that the trial court was procedurally barred from proceeding with summary judgment because of lack of notice to the heirs. As we *7 have noted earlier in this opinion, the heirs were given clear notice by the court that the court was treating the Rule 12(b)(6) motion as a motion for summary judgment. Further, the heirs were given ample opportunity to respond before the court ruled, even though the court did not notify the heirs of the specific date that it would rule.[7] We decline to exhort form and technicality over substance. Likewise, we find no merit in the additional argument advanced in the separate opinion that since the Tullos defendants did not answer the complaint, summary judgment was inappropriate. Even if everything alleged in the complaint were true, summary judgment was appropriate because the complaint did not state any basis upon which relief could be granted in favor of the heirs. As already noted, the complaint does not allege that the heirs hired Tullos to sell the land in question or that he was obligated, by some other means, to sell the land by public or private bidding. Further, once the motion for summary judgment was filed, the heirs could not rest on their pleadings but were obligated to respond, by affidavits or otherwise, setting "forth specific facts showing that there [was] a genuine issue for trial." M.R.C.P. 56(e). In this case, they rested on their pleadings and did so to their peril.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., MYERS, P.J., ISHEE, J., CONCUR. ROBERTS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY GRIFFIS, BARNES AND CARLTON, JJ. LEE, P.J., AND CHANDLER, J., NOT PARTICIPATING.
ROBERTS, J., Concurring in Part, Dissenting in Part.
¶ 24. Although I agree with the majority's conclusion regarding the statute of limitations of the heirs' causes of action, I cannot concur with the majority's determination of the appropriateness of the trial court's actions in regard to the defendants' converted motion for summary judgment. Therefore, I must respectfully dissent.
¶ 25. Before delving into the substantive issues of this case, I feel it necessary to note that if we reverse the trial court's ruling on the statute of limitations issue, which the majority and I agree should be done, the determination of whether summary judgment was appropriate is moot in regard to the Tullos defendants. While the trial court's memorandum opinion dismissed all defendants on the ground of a lapse of the applicable statute of limitations, it alternatively granted summary judgment in favor of only the Pittman defendants. Specifically, the trial court concluded its analysis of the applicability of summary judgment by stating, "[t]hus, even if the claims against the Pittman defendants in this action were not time-barred, the Court would nonetheless be compelled to grant their motion for summary judgment." (Emphasis added). However, the majority seems to affirm the grant of summary judgment for all defendants. *8 Therefore, regardless of the outcome of the remaining issues, the trial court's grant of summary judgment should only be affirmed, if at all, in favor of the Pittman defendants.

I. WHETHER THE TRIAL COURT ABIDED BY MISSISSIPPI RULES OF CIVIL PROCEDURE 12 AND 56.
¶ 26. The issue that must be addressed in the case at hand is whether the trial court acted in accordance with the laws of this state upon converting the defendants' motion to dismiss into a motion for summary judgment. I contend that the precedent established by the supreme court was not followed. Thus, we must vacate the trial court's holding and remand the heirs' case.
¶ 27. First, conversion of the defendants' motion to dismiss a motion for summary judgment was not proper. Mississippi Rule of Civil Procedure 12(b) provides in part:
If, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56....
However, if a plaintiff relied on the accompanying exhibits in forming their complaint, they should not be considered "matters outside the pleadings," and the motion should not be treated as a request for summary judgment. Vinson v. Prather, 879 So.2d 1053, 1056(¶ 11) (Miss.Ct.App. 2004). In the case at hand, two exhibits were admitted into evidence without objection during the hearing: a copy of the appraisal presumptively setting the value of the land at $500 an acre and a copy of the checks issued on Tullos's personal account used to purchase the land. Both of the exhibits were obviously contemplated by the heirs in the formation of the complaint. Therefore, the trial court should not have converted the motion, and the majority's reversal of the trial court's ruling on the issue regarding the statute of limitations should decide this case.
¶ 28. Second, assuming the conversion was appropriate, the trial court's holding still cannot stand. The supreme court has stated:
[B]efore this Court can determine on appellate review if the non-moving party has had a reasonable time in which to file documentation in opposition to a Rule 12(b)(6) motion that has been converted to a Rule 56 motion for summary judgment, we must determine if the non-moving party has been afforded ten days['] notice of the court's intention to conduct a summary judgment hearing on a date certain.

Palmer v. Biloxi Reg'l Med. Ctr., 649 So.2d 179, 183 (Miss.1994) (emphasis added). Additionally, the Palmer court stated:
It is within the judge's discretion to decide whether to consider matters outside the pleadings that are presented to the court. Miss. R. Civ. P. 12(b). If the judge considers matters outside the pleadings, Rule 12(b) requires that the judge comply with the requirements of Rule 56. Rule 56(c) states, in part, that a "motion [for summary judgment] shall be served at least ten days before the time fixed for the hearing." Therefore, the trial court must give the parties ten days['] notice that it is converting the moving party's motion to dismiss on the pleadings into a motion for summary judgment. Once the notice required by *9 Rules 12(b) and 56 has been given, the trial court may then properly consider it as a converted motion for summary judgment along with any materials in support of or in opposition to the motion as of a certain day.
Id. (internal citations omitted).
¶ 29. The mandate of Palmer was subsequently relied upon in Jones v. Regency Toyota, Inc., 798 So.2d 474 (Miss.2001), a case that is procedurally similar to the situation we face here. In Jones, Regency Toyota filed a motion to dismiss Jones's claim, and it also filed an itemization of facts and an affidavit in support of its motion. Id. at 475(¶ 2). In response, Jones filed her pleading, an affidavit, and supporting exhibits "asserting that [Regency Toyota] had converted its motion to dismiss to a motion for summary judgment by utilizing matters outside the complaint." Id. At the hearing on Regency Toyota's motion to dismiss, the trial court stated that it would convert the motion to a motion for summary judgment and announced that the converted motion for summary judgment was well taken. Id. Jones appealed asserting that she was not given the ten-day notice of the summary judgment hearing as required by Mississippi Rule of Civil Procedure 56. Id. at 475-76(¶ 6). The supreme court stated: "While the conversion was proper, the trial court failed to continue the hearing in order to allow Jones the opportunity to present any evidentiary material she felt pertinent to survive the Rule 56 motion." Id. at 476(¶ 6) (emphasis added). Additionally, the supreme court concluded its analysis by stating:
Regardless of how baseless Jones'[s] claim appeared to the trial court, our rules require that she be given 10 days' notice once a motion to dismiss is converted to a motion for summary judgment. For this reason alone, we must vacate the judgment of the Hinds County Circuit Court and remand this case for further proceedings consistent with this opinion.
Id. at 476(¶ 9).
¶ 30. In the case at hand, the heirs filed their complaint on April 8, 2005. Service was accomplished shortly thereafter. The heirs then filed discovery requests, and the defendants simultaneously filed motions to dismiss in May 2005. Despite subsequent motions to compel that were still pending and unheard by the trial court, the heirs' interrogatories and requests for production of documents were never answered. Additionally, the defendants never answered the compliant. No depositions were taken. No pertinent affidavits were presented. No discovery was accomplished at all. Nevertheless, the heirs responded to the defendants' motion to dismiss on November 3, 2006, the day of the hearing.
¶ 31. At the hearing, the defendants' motion to dismiss was the only motion considered by the trial court. Although the motion to dismiss contained additional argument, the primary focus of the motion centered around the expiration of the statute of limitations. Both the heirs and the defendants each submitted an exhibit, without objection, for the trial court to consider. The trial court informed the heirs that he would consider the parties' exhibits and treat the defendants' motion to dismiss as a motion for summary judgment. At this point, before continuing with a hearing on the converted motion for summary judgment, the trial court was required to give the heirs at least ten days' notice of the hearing. However, this did not occur. Therefore, we must vacate the trial court's holding and remand this case to give the heirs the opportunity to take advantage of the procedural safeguards in *10 place for situations such as these as directed by Rule 56, Palmer, and Jones.
¶ 32. Additionally, it is clear from the record that while the heirs propounded their first set of interrogatories and requests for production of documents, the defendants, because they awaited the outcome of their motion to dismiss, neither responded to these requests for discovery nor filed an answer in this case. The supreme court has made it abundantly clear that the trial court must abide by the dictates of Rule 56 when a motion to dismiss is converted into a motion for summary judgment. The reasoning behind strict compliance stems from the finality and harshness of a successful motion for summary judgment. Palmer, 649 So.2d at 184. To throw aside the heirs' right to notice and make a final adjudication of their cause of action based upon a bare record, devoid of any discovery or even an answer from the defendants, flies in the face of Rule 56 and the heirs' constitutional rights.[8] It is an outcome that, in the interests of justice, this Court cannot allow.

II. WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT.
¶ 33. Notwithstanding the fact that the heirs were not given the required ten days' notice prior to the hearing on the defendants' converted motion for summary judgment, I contend that summary judgment was not proper. When reviewing a trial court's grant or denial of summary judgment, this Court must employ the de novo standard. Franklin County Mem'l Hosp. v. Miss. Farm Bureau Mut. Ins. Co., 975 So.2d 872, 874(¶ 11) (Miss.2008). As such, we are required to determine "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). The trial court, and the appellate courts, must view such evidence "in the light most favorable to the non-moving party." Grisham v. John Q. Long V.F.W. Post, No. 4057, Inc., 519 So.2d 413, 415 (Miss.1988). In any event, summary judgment should only be granted with great caution, and only after an adequate time for discovery has been allowed. Evan Johnson & Sons Constr., Inc. v. State of Mississippi, 877 So.2d 360, 365(¶ 17) (Miss.2004).
¶ 34. The trial court dismissed all defendants based upon the perceived lapse of the statute of limitations, but additionally the court granted summary judgment as another ground for dismissing the Pittman defendants. In the case at hand, there were no depositions, answers to interrogatories, admissions, and only one affidavit on file for the trial court to consider in addition to the heirs' complaint and the exhibits submitted in connection with the defendants' motion to dismiss.[9] Additionally, the heirs mailed a letter (Jennings letter) to the trial court and other parties indicating that a witness identified as Mr. Jennings was prepared to testify that he would have paid more for the property than Pittman, but Tullos informed him *11 that bids were no longer being taken. Therefore, when considering the motion for summary judgment the trial court only had, and this Court on appeal only has, the heirs' complaint that has yet to be denied, cancelled checks from Tullos's regular account paying for the land, an appraisal of the land, and the Jennings letter.
¶ 35. In finding summary judgment appropriate for the Pittman defendants, the trial court stated, "there is only an allegation that Pittman agreed to purchase, for $750 per acre, 420 acres of land (which had been appraised by an independent appraiser as being worth only $500 per acre), and that he conveyed the land to Tullos approximately 20 months later." (footnote omitted) (emphasis added). However, the combination of a complete lack of an opportunity for discovery and the absence of an answer by the defendants precludes such a finding. In the complaint, the heirs alleged that Tullos effectuated the sale of the land through the employ of fraud with the ultimate intention of acquiring the property for himself at a lower-than-market-value cost. Additionally, the complaint alleged that the Pittman defendants "knew or should have known that they were being used as `straw men' to purchase the 420 acres on behalf of the Tullos defendants at a price substantially lower than would have been received if bids and/or a private sale had been solicited on said property." Although the proof in the record supporting the heirs' allegation is circumstantial, incredibly, they have not been given an opportunity to further populate the record. It is without reason to say that such an allegation, without an opportunity to conduct discovery or even a denial by Pittman, is deserving of summary judgment.

CONCLUSION
¶ 36. It is my opinion that the trial court judge erred when he converted the defendants' motion to dismiss to one for summary judgment when motions to compel discovery were pending, no depositions had been taken, no answers to interrogatories made, no responses to requests for production of documents made, no pertinent affidavits filed, and, most importantly, no denial by the defendants of the allegations made by the heirs in their complaint. Certainly, assuming the conversion was appropriate, the trial court judge erred by not complying with Rule 56 by giving the heirs ten days' notice of a date certain for the summary judgment hearing or allowing an adequate time for discovery. Additionally, the trial court judge erred when he granted summary judgment as to the Pittman defendants and concluded beyond a reasonable doubt that no genuine issues of material fact existed. Rule 56 allows summary judgment only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. The only pleading the trial court judge had was the unanswered complaint, which alleged numerous causes of action against the defendants, copies of cancelled checks drawn on Tullos's personal account, a real estate appraisal, and a statement from counsel that a live witness was available to dispute the fair market value of the real estate.
¶ 37. Under such circumstances, it is certainly premature to adjudicate the merits of the case on summary judgment. It is without a doubt that a genuine issue of material fact existed regarding the true fair market value of the land; such issue being material to the plaintiff's claim of monetary damages arising from Tullos's alleged fraudulent self-dealing and Pittman's alleged assistance. I would reverse the trial court's grant of summary judgment and remand this case for the trial *12 court to set a time for the defendants to file their answer and allow the case to proceed.
GRIFFIS, BARNES AND CARLTON, JJ., JOIN THIS SEPARATE OPINION.
NOTES
[1] Rule 12(b)(6) of the Mississippi Rules of Civil Procedure allows a defendant to make a motion challenging a plaintiff's "[f]ailure to state a claim upon which relief can be granted."
[2] The facts are taken from the complaint and/or the memorandum opinion of the trial court.
[3] At some point, three acres were removed from the estate; the total land sold on August 21, 2000, was 420 acres.
[4] Although the complaint alleges Pittman purchased the property for $750 per acre, the defendants stated during the hearing on the 12(b)(6) motion that the property sold for $710 per acre.
[5] Rule 56(f) provides:

Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such order as is just.
[6] See Turner v. Estate of Hightower, 417 So.2d 919, 922 (Miss. 1982).
[7] Palmer v. Biloxi Regional Medical Center., 649 So.2d 179 (Miss. 1994), cited by the separate opinion as authority for the contention that the trial court erred in granting summary judgment because of lack of the requisite ten-day notice, is clearly distinguishable from this case. There, the party to whom summary judgment was granted had filed neither a Rule 12(b)(6) motion nor a motion for summary judgment when the court granted summary judgment. Instead, the successful party had only filed a motion to dismiss for failure to answer discovery and an amended motion to strike some discovery. Id. at 181-82.
[8] "The requirements of Rule 56(c), far from being a mere extension of our liberal procedure exalting substance over form, represents a procedural safeguard to prevent the unjust deprivation of a litigant's constitutional right to a jury trial." Palmer, 649 So.2d at 184.
[9] The only affidavit in the record is from Donald Boone, one of the original defendants. Boone was dismissed by the trial court prior to the hearing on the motion to dismiss, and his affidavit provides nothing of import in this appeal and was totally irrelevant to the issues before the trial court.